IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

ROGER DYALS and          *
DEE GRANT PORTER,        *
                         *
        Plaintiffs,      *
                         *
    v.                   *            CV 212-207
                         *
Sheriff TOMMY J. GREGORY, *
in his official capacity, *
                         *
        Defendant.       *

## O R D E R

Presently before the Court is Defendant Sheriff Tommy
Gregory's ("Sheriff") motion for summary judgment and Plaintiffs
Roger Dyals and Dee Grant Porter's (collectively, "Plaintiffs")
motion to amend. (Doc. nos. 31, 52.) The Sheriff seeks summary
judgment on all of Plaintiffs' claims, and Plaintiffs seek to
attach two exhibits to their response in opposition to summary
judgment. Plaintiffs, former deputies in the Camden County
Sheriff's Office ("Sheriff's Office"), were terminated on June
29, 2011, as part of a reduction in force purportedly because of
a limited budget. However, they allege that they were
discriminated against on the basis of their age and retaliated
against in violation of the Age Discrimination in Employment
Act, 29 U.S.C. § 621, et seq. ("ADEA"). Additionally, Dyals
claims that he is entitled to unpaid overtime and was retaliated

against in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). As discussed below, the Sheriff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and Plaintiffs' motion to amend is **GRANTED**.


# I. BACKGROUND

## A. Factual Background

### 1. *Plaintiffs' Employment History and Terminations*

This case arises out of Plaintiffs' employment as deputy sheriffs with the Sheriff's Office. Dyals was hired in November 2002 by former Sheriff Bill Smith as a Lieutenant Operations Officer. (Dyals Dep. at 11.) Dyals remained in that position until 2009 at which time he was promoted to Captain. (Id. at 14.) When Sheriff Gregory was elected in 2009 and assumed office, there was a period of reorganization that saw Dyals reassigned and demoted to a deputy fleet manager. (Id. at 16-18.) This also resulted in a decrease in pay. (Id. at 18.) Dyals testified that the Sheriff told him, "Well, you either accept it or you can go home." (Id.) In January 2010, he was again reassigned, this time as a courtroom deputy. (Id. at 20.) This transfer resulted in another reduction in pay. (Id.) Dyals remained in this position until his termination. (See Doc. no. 31-1 ¶ 4.)

Porter, likewise, was hired by Sheriff Smith in March 2005. (Porter Dep. at 11.) He was originally hired as a paramedic in the Jail/Corrections Division. (Id.) Porter remained in this position until September 2009 when Sheriff Gregory made the decision to contract out the medical care to a private company in order to save money. (Id. at 17.) At that time, Porter was reassigned as a deputy to the special operations unit. (Id. at 21.) Porter excelled at this position, drawing high praise and excellent performance evaluations from his supervisor, Kevin Chaney. (See Doc. no. 37-1 at 63.) Porter remained in this position until he was terminated. (See Doc. no. 31-1 ¶ 5.)

On June 29, 2011, Plaintiffs, along with seven other employees, were laid off. (See Doc. no. 37-1 at 54.) At the time of their termination, Dyals was 66 and Porter was 50 years old. (See Doc. no. 41-1 at 15.) Sheriff Gregory contends that the lay-offs were necessary due to "budgetary constraints." (Doc. no. 37-1 at 54.) Apparently, the Sheriff requested a budget for the 2012 fiscal year of approximately $8 million, but the Camden County Board of Commissioners approved a budget for the Sheriff's Office (including the Jail/Corrections division) of only $5.5 million. (Fender Dep. at 12.) Michael Fender, the Director of Finance for Camden County, testified that this represented a decrease of approximately $600,000 from the 2011

budget. (Id.) Plaintiffs argue the decrease was far less, only $164,170. (See Doc. no. 41-1 at 29.)

Sheriff Gregory explains that once he determined that layoffs were necessary, he asked each division leader to rank his or her employees. (Gregory Dep. at 62.) Purportedly, the employees at the bottom of each list were those at risk of being terminated. (Id.) Lori Whitlow, the Executive Administrative Assistant to Sheriff Gregory, supervised the courthouse security division. (Whitlow Aff. ¶¶ 2, 4.) She testified that in making her list, she considered an employee's work history, attendance, and any disciplinary actions. (Id. ¶ 9.) Applying these criteria, Dyals ranked at the bottom of his division. (Id. ¶ 10.) Unlike Whitlow, however, Kevin Chaney, special operations commander, ranked his employees solely on one factor: seniority. (Chaney Dep. at 13.) Consequently, because Porter was the last individual to join the special operations division, he was ranked last. (Id.)

### 2. 2012 Hirings

Despite laying off nine employees aged 70, 66, 56, 54, 50, 43, 41, and 38 because of allegedly limited funds,[1] Sheriff Gregory continued to advertise for and hire new employees throughout 2011 and 2012. In fact, the Sheriff hired three

---

[1] Although Plaintiffs' reply to Sheriff's motion for summary judgment asserts that Brandi Nelson, the ninth employee, is "age under 40", the record does not reflect her age. (See Doc. no. 40-2 at 5 and Doc. no. 41-1 at 15.)

employees – one corrections officer and two deputies – on June 27, 2011, two days prior to the lay-offs. (See Doc. no. 41-1 at 15.) The ages of the new hires were 25, 39, and 51. (Id.)

As early as September 30, 2011, the Sheriff placed advertisements requesting applications for open Correctional Officer positions in the newspaper. (See Doc. no. 36-2 at 45.) And over the next several months, the Sheriff hired an additional eighteen employees, including four deputies, twelve corrections officers, one finance officer, and one administrative clerk. (Id.) The ages of the new hires ranged from 19 to 51, and only three of the hires were over the age of 40. (Id.) Dyals alleges that he was replaced by a deputy with less training and experience who was significantly younger than him. (Dyals Decl. ¶¶ 16-17.) And although an employee was not hired to replace Porter, Brittany Barnes was transferred into the special operations division upon Chaney's request. (Chaney Dep. at 25.)

Despite being aware of the advertisements, Plaintiffs did not reapply for employment with the Sheriff's Office. Plaintiffs did not believe that they needed to reapply because when they were terminated they were told that they were "subject to recall." (Porter Decl. ¶ 10; Dyals Decl. ¶ 13.) They were not informed that if they wanted to return to service, they would have to reapply. (Porter Decl. ¶ 9; Dyals Decl. ¶ 12.)

They allege that they were not rehired because they filed claims of age discrimination with the EEOC shortly after their terminations. (See Doc. no. 50-1 at 2.)

### 3. Dyals' Unpaid Overtime

Dyals also claims that Sheriff Gregory refused to pay him for overtime hours he worked. Dyals testified that due to the strained budget, Sheriff's Office employees were instructed not to record overtime hours on their timesheets. (Dyals Dep. at 68.) Instead, they were told to record any hours beyond forty that they worked during a given week in a personal notebook and that they would receive "comp time" in lieu of compensation. (Id. at 68, 71-72, 87.) Employees were then supposed to take off any "comp time" at the end of the week. (Dyals Dep. at 87.) However, as a result of being understaffed, Dyals was unable to use his "comp time." (Id.) By January 2010, Dyals had accumulated approximately 50.5 hours of "comp time." (Id. at 99.) When he approached the Sheriff about taking some of this time, the Sheriff stated that he would "have to eat those overtime hours." (Id.)

### B. Procedural Background

On December 12, 2012, Plaintiffs filed suit in this Court. (Doc. no. 1.) On September 20, 2013, Sheriff Gregory filed his motion for summary judgment on all of Plaintiffs' claims. (Doc. no. 31.) Plaintiffs filed their response in opposition to

summary judgment on October 11, 2013. (Doc. nos. 40-45.) And the Sheriff replied on October 25, 2013. (Doc. no. 48.) Plaintiffs filed a sur-reply brief on November 7, 2013, and a motion to amend their response in opposition to summary judgment on November 27, 2013. (Doc. nos. 50, 52.) The time for any further responses has expired, and the motions are ready and ripe for adjudication.

## II. MOTION TO AMEND

Plaintiffs seek to amend their response in opposition to summary judgment by attaching an exhibit and affidavit in support of their brief. Sheriff Gregory has not opposed Plaintiffs' motion to amend. Consequently, Plaintiffs' motion (doc. no. 52) is **GRANTED**.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." <u>U.S. v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. <u>Jones v. City of Columbus</u>, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. <u>Clark</u>, 929 F.2d at 608.

8

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk gave Plaintiffs appropriate notice of the motion for summary judgment and informed them of the summary judgment rules, the right to file affidavits or

other materials in opposition, and the consequences of default. (Doc. no. 32.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

## IV. DISCUSSION

Plaintiffs allege claims for age discrimination and retaliation under the ADEA. In addition, Dyals brings claims under the FLSA for unpaid overtime and retaliation. Sheriff Gregory seeks summary judgment on all of Plaintiffs' claims. The Court will first address Plaintiffs' age discrimination claim before turning to Plaintiffs' ADEA retaliation claim and Dyals' claims under the FLSA.

### A. Age Discrimination Claims

Plaintiffs primarily assert age discrimination claims under the ADEA. Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing 29 U.S.C. § 623(a)(1)). A plaintiff may "establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence." Van Voorhis v. Hillsborough Cnty. Bd.

of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008). When a plaintiff relies on circumstantial evidence to prove discrimination under the ADEA, as is the case here, courts employ the McDonnell-Douglas burden-shifting framework. Chapman, 229 F.3d at 1024. Under this framework, a plaintiff must first establish a prima facie case of discrimination. Id. A plaintiff may do so by showing that he was (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) replaced by or otherwise lost a position to a younger individual. Id.

"In situations involving a reduction in force, however, the employer seldom seeks a replacement for the discharged employee. Accordingly, the fourth prong of the prima facie case is altered to require that the plaintiff 'produce evidence, circumstantial or direct, from which the factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" Mauter v. Hardy Corp., 825 F.2d 1554, 1557 (11th Cir. 1987) (citing Williams v. Gen. Motors Corp., 656 F.2d 120, 129 (5th Cir. 1981)). To establish the requisite discriminatory intent, the plaintiff must present evidence that could lead a reasonable factfinder to conclude that (1) the defendant consciously refused to consider retaining or relocating plaintiff because of his age, or (2) the defendant

regarded age as a negative factor in its actions. Jones v. BE&K Eng'g Co., 146 Fed. Appx. 356, 359 (11th Cir. 2005).

If a plaintiff successfully establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate non-discriminatory reason for its action. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1227 (11th Cir. 1993). This intermediate burden is "exceedingly light," and once the employer offers a justification, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason for its actions is pretextual and that the employer did in fact intend to discriminate. Ward v. Gulfstream Aerospace Corp., 894 F. Supp. 1573, 1578 (S.D. Ga. 1995) (citing Batey v. Stone, 24 F.3d 1330, 1334 (11th Cir. 1994)).

*1. Prima Facie Case*

The Court determines that Plaintiffs have presented sufficient evidence to establish a prima facie case of age discrimination. Sheriff Gregory does not challenge that Plaintiffs are members of the protected class and that they were subject to an adverse employment action. Rather, the Sheriff contends that Plaintiffs were not qualified for their positions and have not produced evidence showing that he intended to discriminate. The Court disagrees. First, Plaintiffs received exemplary evaluations or reviews both prior and subsequent to

their terminations.   On April 1, 2011, Kevin Chaney wrote the
following regarding Porter:

> You successfully completed every task and mission
> given without flaw.  Your dedication to drug diversion
> investigations is truly remarkable.
>
> [Porter], you are a tireless and tenacious Deputy
> Sheriff who shows a lot of initiative and takes pride
> in this profession.  Your superb performance and
> dedication to excellence have been instrumental in
> accomplishing the department's mission.  Your spirit
> of teamwork truly reflects the standard sought by the
> Special Operations Team.

(Doc. no. 37-1 at 63.)   Regarding Dyals, Deborah Young, his
immediate supervisor, testified that he was "a good worker."
(Young Dep. at 30.)   After he was terminated, she called Dyals
and told him that the Sheriff "was messing up" because Dyals was
"her best fulltime worker."   (Dyals Decl. ¶ 4.)   This is
sufficient to create a genuine dispute of fact that they were
qualified to serve in their positions.   See Ross v. Rhodes
Furniture, Inc., 146 F.3d 1286, 1290 (11th Cir. 1998) ("Given
the glowing evaluations [the plaintiff] received prior to being
discharged, he was certainly qualified to serve as [the
defendant's] delivery manager.").

   Second, Plaintiffs have produced sufficient circumstantial
evidence to create a jury question on whether Sheriff Gregory
intended to discriminate on the basis of their age.   Dyals
testified that it was relayed to him that in a meeting Sheriff
Gregory stated, "Why would I get rid of a younger deputy when I

can get rid of a Bill Argo or Roger Dyals?"[2] (Dyals Dep. at 47.)

Dyals also testified regarding a conversation he had with Kevin

Barber in which Barber told Dyals that "he did not understand

why Sheriff Gregory was making comments about doing something

about the 'old people' at the courthouse." (Dyals Decl. ¶ 8.)

Barber said, "I don't know why the Sheriff is so bound and

determined to get rid of you and that other 'greybeard,'"

pointing to Argo. (Id.) Although Porter is not specifically

named, this testimony is sufficient to permit a jury to infer

that Sheriff Gregory intended to discriminate against the older

employees in the Sheriff's Office, including Plaintiffs.[3]

### 2. Legitimate Nondiscriminatory Reason

Because Plaintiffs have established a prima facie case,

Sheriff Gregory must articulate a legitimate nondiscriminatory

reason for the termination of Dyals and Porter. Sheriff Gregory

asserts that Plaintiffs were terminated because the Sheriff's

Office budget was cut by approximately $600,000 for the 2012

fiscal year. Because the majority of the Sheriff's Office

budget is spent on employees' salaries, he claims that he was

forced to lay off several employees. In order to carry out the

---

[2] At the time of their terminations, Argo was 70 years old and Dyals was 66 years old. (Doc. no. 41-1 at 15.)

[3] Although both Dyals and Porter testify to these remarks, Sheriff Gregory challenges only Porter's testimony regarding these statements as hearsay. Thus, without resolving whether Porter's statements are admissible, the Court finds that Dyals' testimony regarding these statements is sufficient to successfully prove a prima facie case. (See Doc. no. 31-2 at 12; Doc. no. 48 at 11.)

cuts, he testified that he instructed each division chief to rank their subordinates and that the employees at the bottom of the list may lose their job. (Gregory Dep. at 62.) Thus, the Sheriff has met his burden of articulating a legitimate nondiscriminatory reason for the termination of Plaintiffs. See Chavez v. URS Fed. Tech. Servs., Inc., 504 Fed. Appx. 819, 821 (11th Cir. 2013) (finding that a budget cut was a legitimate, nondiscriminatory reason for termination).

### 3. Pretext

Accordingly, in order to avoid summary judgment, Plaintiffs must introduce significantly probative evidence showing that the asserted reason for their termination is merely pretext for discrimination. "The burden of proving pretext merges with the plaintiff's ultimate burden of proving that age was a determining factor in his discharge, and it can be met by showing that a discriminatory reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation." Clark, 990 F.2d at 1228. Plaintiffs must "meet the proffered reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). Thus, Plaintiffs must produce sufficient evidence to allow a reasonable finder of fact to conclude that Sheriff Gregory's

articulated reason is not believable. They may do this by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. Id. "A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Id.

Sheriff Gregory contends that summary judgment is appropriate because Plaintiffs' evidence of pretext is nothing more than a "weak, amorphous whiff of discrimination." Bell v. Crowne Mgmt., LLC, 844 F. Supp. 2d 1222, 1234 (S.D. Ala. 2012). Plaintiffs, however, present the following evidence: (1) the severity of the budgetary shortfall was significantly less than what the Sheriff represented; (2) the Sheriff hired three individuals two days prior to terminating Plaintiffs; (3) the Sheriff also hired eighteen additional employees during the 2012 fiscal year; (4) the Sheriff deviated from his ranking system on at least three separate occasions; and (5) the Sheriff's discriminatory comments. The Court concludes that Plaintiffs' evidence is significantly probative and demonstrates weaknesses and inconsistencies in the Sheriff's proffered explanation. Therefore, Plaintiffs have met their burden in demonstrating pretext.

First, the record belies the Sheriff's contention that the *Sheriff's Office budget* for 2012 was $600,000 less than the

previous year. Budget documents presented by Plaintiffs and Fender show that the Sheriff's Office budget was $3,283,220 in 2012. (See Doc. no. 34-2 at 46; Doc. no. 41-1 at 29.) This is a decrease of $164,170 - not $600,000.[4] (Doc. no. 34-2 at 46.)

Second, despite the apparent budgetary constraints which necessitated the termination of nine trained and experienced employees, the Sheriff approved the hire of three individuals on June 27, 2011, two days prior to the layoffs. (See Doc. no. 41-1 at 15.) The ages of the three individuals hired were 25, 39, and 51 which stands in stark contrast to the ages of the terminated employees: 70, 66, 56, 54, 50, 43, 41, and 38.[5] (Id.) When asked to explain, Sheriff Gregory testified that the hiring process for these three individuals could have begun up to two weeks in advance, and during that time, he received word that he would not receive the full budget that he had requested. (Gregory Dep. at 198-99.) However, based on the budget documents, it should not have come as a surprise to the Sheriff that the adopted budget (for the Sheriff's Office and

_____

[4] It appears that the Sheriff cites to the adopted budget for 2012 which combines the budgets for both the Sheriff's Office and Jails/Corrections. When combined, these budgets total $5,502,118. (See Doc. no. 34-2 at 46.) However, after analyzing the budget documents provided, the Court believes that the relevant budget is that allocated only to the Sheriff's Office for several reasons. First, Plaintiffs' salaries were funded through the Sheriff's Office budget. Second, the Court is unaware of any testimony that the Sheriff can commingle or transfer funds allocated to the Sheriff's Office and the Jail/Corrections division. Further, the records indicate that the Sheriff expended the allocated budget for each office without transferring or commingling from 2008 to 2012. (See Doc. no. 34-2 at 46.)

[5] The record does not indicate the age of one of the individuals terminated on June 29, 2011. (See Doc. no. 41-1 at 15.)

Jail/Corrections) was well short of his request. The record demonstrates that the adopted budget consistently fell short of the budget requested by the Sheriff. Dating back to 2008, the difference between the requested budgets and the adopted budgets was as follows: $2,026,116 (2008), $2,198,117 (2009), $1,808,093 (2010), $1,247,833 (2011), and $2,472,388 (2012).[6] (See Doc. no. 34-2 at 46.)

Third, in addition to the pre-termination hires, Sheriff Gregory continued to hire employees throughout the 2012 fiscal year despite the reduced budget. Specifically, the Sheriff hired six individuals in the Sheriff's Office, including four deputy sheriffs (ages 26, 30, 33, and 37), two of which were part time. (See Doc. no. 41-1 at 15.) The Sheriff also hired a finance officer, an administrative clerk, and twelve individuals in the Jails/Corrections division. (Id.) The ages of these individuals were 19, 19, 22, 23, 24, 25, 26, 28, 33, 34, 34, 38, 43, and 47. (Id.)

Fourth, Plaintiffs presented evidence that the Sheriff deviated from his purported ranking system on at least three different occasions. Sheriff Gregory testified:

> I went to each division captain and said, "Look, unfortunately, our budget has been reduced. It equates to dollars. We've done all we can do everywhere else." I mean, the bulk of most law enforcement is personnel. That's where the big money

---

[6] The Sheriff's requested budget in 2012 was approximately $600,000 more than his requested budget in 2011. (Id.)

comes from, so if people have to go, I wanted to know from each division chief, captain, whoever run[s] that division, and mostly it was captains, but sometimes lower ranks ran them, and we said, "Rank your people, you know, [n]umber 1 being your best," and if you had a five-man division, the one at the bottom of the list was the one that could possibly lose their job.

(Gregory Dep. at 62.) The Sheriff, however, did not follow this procedure in determining at least two of the employees for the June 29, 2011 layoffs. John Spangler, a deputy in the corrections division, was ranked 22 out of 35 and 24 out of 34 on separate lists made by Charles Byerly and April Palmer. (See Doc. no. 41-1 at 25-26.) Despite not being ranked at the bottom by either supervisor, he was terminated. Similarly, Captain Jeremy Rogers, the investigative division chief, was terminated despite not being at the bottom of any ranking list. Indeed, the record indicates that he was responsible for creating a ranking list. (Gregory Dep. at 172.) When questioned, Sheriff Gregory testified that Rogers was "already ranked . . . [p]robably [by] me. . . . I may have on that one. I'm not sure how we arrived at that one." (Id.)

In addition, Sheriff Gregory previously instructed one of his deputy supervisors to rank specific employees at the bottom of her list. Amanda Crosby testified that she was approached by the Sheriff in 2009 and "he told me that he wanted [Holly Douglas and Charles Moss] gone and asked me to rank how he wanted them, and that's how I did it and gave it to him, and

then when he laid people off, Charles Moss and Holly Douglas were two of the people that were laid off." (Crosby Dep. at 90-92.) She added, "Them two would not have been my bottom choice. Charles Moss was a very strong deputy. . . . Holly, she could have did - had some retraining, she probably would have been okay." (Id.) When read in the light most favorable to Plaintiffs, these deviations from the Sheriff's purported ranking system create a genuine issue of material fact of pretext. See Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1299 (11th Cir. 2006) (reversing summary judgment, in part because "an employer's deviation from its own standard procedures may serve as evidence of pretext").

Fifth, the Sheriff made multiple comments suggesting a discriminatory intent. (Dyals Dep. at 47; Dyals Decl. ¶ 8.) In sum, Plaintiffs marshal significant circumstantial evidence that the Sheriff's budgetary explanation for the terminations was pretextual. Plaintiffs have met the proffered legitimate nondiscriminatory reason for their terminations "head on," by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that would permit findings of pretext and discrimination. See Brooks, 446 F.3d at 1163. Therefore, the Sheriff's motion for summary judgment on Plaintiffs' ADEA age discrimination claims is **DENIED**.

## B. ADEA Retaliation Claims

Plaintiffs also bring claims for retaliation under the ADEA, alleging that Sheriff Gregory took an adverse employment action against them by not rehiring them in retaliation for their filing complaints of age discrimination with the EEOC. To establish a prima facie case of retaliation under the ADEA, a plaintiff must present evidence that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). To satisfy the adverse employment action requirements, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id.

"An employer's failure to recall or rehire an employee is 'undoubtedly an adverse employment action' where the employee reapplied for the position after termination." Jones v. Ala. Power Co., 282 Fed. Appx. 780, 785 (11th Cir. 2008). "If the employer uses formal procedures to announce positions and identify candidates, the plaintiff cannot make out a prima facie case unless he shows that he applied for the position." Id.

(citing <u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d 763, 768 (11th Cir. 2005)). "Furthermore, under such circumstances, a general interest in being rehired without submitting an application is insufficient to satisfy the application requirement." <u>Id.</u> (citing <u>Smith v. J. Smith Lanier & Co.</u>, 352 F.3d 1342, 1345 (11th Cir. 2003)).

Here, the parties do not dispute that Plaintiffs engaged in statutorily protected conduct when they filed EEOC charges of age discrimination. Rather, Sheriff Gregory contends that Plaintiffs did not suffer any adverse employment action because they did not reapply for any positions with the Sheriff's Office after their termination despite knowing about the openings. Plaintiffs argue that they did not reapply because they were not told by the Sheriff that they needed to reapply. (<u>See</u> Porter Decl. ¶ 9; Dyals Dep. at 27-28.) However, Dyals testified that he also was not told that he couldn't reapply. (Dyals Dep. at 28.) And when asked whether he expected to be rehired, Dyals testified, "No." (Dyals Dep. at 28.) Porter testified that when he was terminated, Sheriff Gregory told him that he would be "subject to recall to duty" if the budget improved. (Porter Decl. ¶ 10.) He claims that his belief that he would be recalled was further affirmed upon reading a June 30, 2011 newspaper article that stated, "If the economy improves, Gregory hopes to be able to recall some if not all of those laid off."

(Id. ¶ 11; Doc. no. 41-1 at 30.)   As a result, Plaintiffs testified that it was their understanding that after an employee is laid off, he will later be recalled to return when the reason for the layoff no longer exists.[7]   (Porter Decl. ¶ 12; Dyals Decl. ¶ 13.)

Plaintiffs also introduce evidence that on at least one occasion, an employee that had been previously terminated received a telephone call asking her to come back to work.[8] (Chancey Dep. at 8-9.)   Plaintiffs argue that taken together, these facts permit a reasonable jury to find that they were not rehired in retaliation for their EEOC age discrimination charges.

The Court, however, disagrees.   It is undisputed that the Sheriff's Office used formal procedures to announce the open positions and identify candidates by advertising in the newspaper and requesting applications for those interested.   It is also undisputed that Plaintiffs were aware of the advertisements and yet did not submit applications.   In addition, the Court notes that the advertised openings were for

---

[7] Plaintiffs assert without citation that it is a "consistent practice with most workplaces when individuals are laid off" for employers to call them on the telephone and not require them to reapply.   (Doc. no. 40-2 at 20.)

[8] Sheriff Gregory argues that this deposition evidence is inadmissible because Ms. Chancey's deposition was taken in another case and is not properly a part of this case's record.   See Fed. R. Civ. P. 32(a)(4)(8).   The Court, however, need not decide that issue as it finds that Plaintiffs have not produced sufficient evidence creating a genuine dispute of material fact that it was standard procedure for Sheriff's Office employees to be rehired without submitting an application.

a deputy correctional officer position. Neither Dyals nor Porter were correctional deputies at the time of their termination, and they have not testified that they were interested in corrections. Moreover, Plaintiffs have not cited to any case or provided sufficient facts that excuse their failure to apply. Ms. Chancey's testimony, standing alone, is insufficient to create a genuine dispute of material fact that Sheriff Gregory had a standard practice of recalling previously terminated employees without having them reapply.

Although Plaintiffs were not told that they needed to reapply, "[i]t is not unfair or unduly burdensome to expect a plaintiff to submit an application for that vacancy as a prerequisite for stating a failure-to-hire claim." Velez v. Janssen Ortho, LLC, 467 F.3d 802, 808 (1st Cir. 2006). In the absence of evidence either that the Sheriff's Office had a standard practice of recalling previously terminated employees without having them reapply or they were told that they need not reapply, Plaintiffs have not shown that they suffered any adverse employment action. Because Plaintiffs did not reapply for any positions with the Sheriff's Office after their termination, they cannot show that they suffered a materially adverse employment action and thus cannot make out a prima facie case of retaliation. See Jones, 282 Fed. Appx. at 785.

Consequently, summary judgment in favor of Sheriff Gregory is appropriate on Plaintiffs' ADEA retaliation claim.

## C. Dyals' FLSA Claim For Unpaid Overtime

Dyals also asserts a claim for unpaid overtime pursuant to 29 U.S.C. § 207(a). He contends that he was underpaid approximately $1,575.00 for 52.5 overtime hours worked from August 2009 to January 2010. Sheriff Gregory argues that Dyals' claim fails for two reasons: Dyals' claim is (a) subject to the law enforcement exemption under Section 7(k) of the FLSA and (b) outside the limitations period.

### 1. *Law Enforcement Exemption*

In general, employers are required to pay employees overtime for hours worked over forty hours per week. 29 U.S.C. § 207(a)(1). There is an exception, however, for law enforcement employees in Section 7(k), which provides:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities . . . if . . .
>
> > (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 . . . bears to 28 days, . . .
>
> compensation of a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k). Thus, if the Sheriff's Office had adopted a qualified work period between at least seven consecutive days and twenty-eight, "[l]aw enforcement employees . . . are entitled to time and one-half pay only after they have worked more than 171 hours in a twenty-eight day work period." _Avery v. City of Talladega, Ala._, 24 F.3d 1337, 1342 (11th Cir. 1994).

Focusing exclusively on the definition of an "employee in law enforcement activities," Sheriff Gregory contends that Dyals' claim is foreclosed because Dyals, as a courthouse security deputy, is subject to the exemption.[9] Dyals, however, argues that he does not fall within the exemption because his work period was not at least seven days. The Court agrees.

"The burden is on the employer to prove he has adopted a 7(k) workweek exemption." _Birdwell v. City of Gadsden, Ala._, 970 F.2d 802, 805 (11th Cir. 1992) (citing _Corning Glass Works v. Brennan_, 417 U.S. 188, 196-97 (1974)). Exemptions from the overtime provisions of section 207 are to be narrowly construed against the employer. _Id._ (citing _Tony & Susan Alamo Found. v. Sec'y of Labor_, 471 U.S. 290, 296 (1985)). The Act should be

---

[9] For section 7(k) purposes, the term "any employee . . . in law enforcement activities" refers to any employee: (1) who is a uniformed or plainclothed member of a body of officers and subordinates who are empowered by State statute or local ordinance to enforce laws designed to maintain public peace and order and to protect both life and property from accidental or willful injury, and to prevent and detect crimes, (2) who has the power to arrest, and (3) who is presently undergoing or has undergone or will undergo on-the-job training and/or a course of instruction and study which typically includes physical training, self-defense, firearm proficiency, criminal and civil law principles, investigative and law enforcement techniques, community relations, medical aid and ethics." 29 C.F.R. § 553.211(a).

interpreted liberally in the employee's favor. Id. (citing Mitchell v. Lublin, McGaughy & Assoc., 358 U.S. 207, 211 (1959)). The defendant must prove applicability of an exemption by "clear and affirmative evidence." Id. And whether the employer has proved that he has adopted a 7(k) work period is a question for the jury. Id. Here, Sheriff Gregory has not presented *any* evidence that Dyals had a 7(k) work period. Consequently, he has not satisfied his burden to show that Dyals' work period was "at least seven but no more than twenty-eight consecutive days." This argument fails.

## 2. *Statute of Limitations*

Sheriff Gregory also argues that Dyals' claim is barred by FLSA's statute of limitations. 29 U.S.C. § 255(a) provides that an action for unpaid overtime compensation "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). "An employer knowingly violates the Act if he disregards the minimum wage laws deliberately or intentionally, such as by ignoring advice from a responsible official [] that the conduct in question is not lawful." Davila

v. Menendez, 717 F.3d 1179, 1185 (11th Cir. 2013) (internal quotations and citations omitted). "An employer acts with reckless disregard for the Act if the employer's conduct is more than merely negligent and is blameworthy if the employer should have inquired further into whether his conduct was in compliance with the Act, and failed to make adequate further inquiry." Id. (internal quotations and citations omitted). "In other words, an employer does not commit a willful violation if he acts unreasonably, but not recklessly, in determining his legal obligation under the Act." Id. (internal quotation and citation omitted). And "the burden rests with the employee to prove by a preponderance of the evidence that [his] employer acted willfully." Id.

Here, the evidence shows that Sheriff Gregory recklessly disregarded the FLSA overtime requirements. The Sheriff testified that he attended a sheriffs' certification course,[10] where he received training regarding the overtime requirements under the FLSA. (Gregory Dep. at 68-69.) Specifically, he was taught that deputies could "work 171 hours in a 28-day period. Anything over that, you need to compensate at time and a half." (Id. at 70.) Despite his knowledge of the FLSA requirements, when Dyals approached Sheriff Gregory about his accumulated overtime hours on January 22, 2010, the Sheriff told him flatly

---

[10] Sheriff Gregory testified that there is a certification course that by law all sheriff-elects must attend. (Gregory Dep. at 68.)

that "we don't have comp hours" and, thus, he would "have to eat those hours." (Id. at 71; Dyals Decl. ¶ 18.) The record does not indicate that the Sheriff made *any* inquiry into whether Dyals had worked sufficient hours to be entitled to overtime compensation. Under this Circuit's precedent, even if Sheriff Gregory believed Dyals was not entitled to any overtime compensation due to the law enforcement exemption, he should have at least inquired to determine whether Dyals had worked more than 171 hours in a twenty-eight day work period. The Sheriff's failure to inquire equates to reckless disregard for the Act's requirements.

As a result, Dyals' claim for unpaid overtime is subject to the three-year limitations period. "It is well settled that a separate cause of action for overtime compensation accrues at each regular payday . . . for which the overtime compensation is claimed." Aly v. Butts Cnty., Ga., 841 F. Supp. 1199, 1201 (M.D. Ga. 1994). Dyals filed his Complaint on December 12, 2012. Thus, any claims for unpaid overtime prior to December 12, 2009, are untimely. Accordingly, Dyals' claim for unpaid overtime is limited to six potential occurrences of overtime: December 15, 2009, January 2, 2010, January 6, 2010, January 13, 2010, January 27, 2010, and January 28, 2010.[11] (See Doc. no.

---

[11] The record is rife with ambiguities regarding the number of overtime hours Dyals logged on these dates. In his notebook, Dyals recorded the following overtime hours: December 15, 2009 (1.5 hours), January 2, 2010 (4

36-1 at 10.) Upon the foregoing, summary judgment is **DENIED** as to Dyals' FLSA unpaid overtime claim.

### 3. Dyals' FLSA Retaliation Claim

Dyals also alleges that Sheriff Gregory retaliated against him under the FLSA. "The FLSA protects persons against retaliation for asserting their rights under the statute." Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342 (11th Cir. 2000). A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: (1) he engaged in activity protected under the act; (2) he subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action. Id. at 1342-43. "If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext." Id. at 1343. "In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights." Id.

Dyals has not satisfied his burden of demonstrating a prima facie case of retaliation under the FLSA. Specifically, he has not provided a single citation to record evidence in support of

---

hours), January 6, 2010 (2 hours), January 13, 2010 (3 hours), January 27, 2010 (1.5 hours), and January 28, 2010 (.5 hours). (See Doc. no. 36-1 at 10.) However, Sheriff Gregory produced his timesheets, which show a substantially different picture: December 15, 2009 (0 hours), January 2, 2010 (0 hours), January 6, 2010 (0 hours), January 13, 2010 (2.5 hours), January 27, 2010 (1.5 hours), and January 28, 2010 (4 hours). (See Doc. no. 36-1 at 34.) Accepting as true Dyals' testimony that he was instructed to record his overtime individually, the Court finds a triable issue of fact exists as to how many, if any, overtime hours he logged.

his allegations in violation of the Local Rules, the Federal Rules of Civil Procedure, and Eleventh Circuit precedent. See S.D. Ga. L.R. 56.1 ("Each statement of material fact *shall* be supported by a citation to the record."); Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of material in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials."); Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) ("Making district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him. . . . Likewise, district court judges are not required to ferret out delectable facts buried in a massive record.").

In the Complaint, Dyals alleged that he spoke with Sheriff Gregory about his unpaid overtime compensation and the Sheriff told him that he would have "eat those hours." (Compl. ¶ 61.) He then alleged that the Sheriff responded by pressuring him to retire and issuing an unwarranted reprimand. (Id. ¶¶ 62-63.) In his brief in opposition to Sheriff Gregory's motion for

summary judgment, he devotes a single sentence to his FLSA retaliation claim. (See Doc. no. 40-2 at 21) ("There are also genuine issues of material fact as to Plaintiff Dyals' FLSA retaliation claim.") And in his surreply brief, Dyals' discussion of his FLSA claims omits any mention, argument, or evidence advancing his FLSA retaliation claim. (See Doc. no. 50 at 23-24.) Dyals failure to present *any* argument or provide a *single* citation to record evidence in support of his FLSA retaliation claim forecloses relief. Accordingly, Sheriff Gregory's motion for summary judgment is **GRANTED** on Dyals' FLSA retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, Sheriff Gregory's motion for summary judgment (doc. no. 31) is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' motion to amend (doc. no. 52) is **GRANTED**. This case shall proceed to trial on Plaintiffs' age discrimination claims and Dyals' FLSA overtime claim.

**ORDER ENTERED** at Augusta, Georgia, this ⟨5th⟩ day of September, 2014.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA